Case number 21-3910, Eastern Missouri, Ryan Bresnahan v. City of St. Peters, et al. Mr. Brenkringer? Good morning, may it please the Court? Counsel? My name is Peter Brenkringer. I represent the appellant in this case who is the plaintiff, Mr. Brian Bresnahan. Your Honors, this is a singular issue of whether Mr. Bresnahan was terminated unlawfully in violation of his constitutional right to free speech. This appeal comes from a dismissal of the underlying case under a 12B6 motion. That was for the plaintiff failing to state a cause of action. At this point in time, we're reviewing this matter de novo. I would just start with the fact that this is very clearly a case that falls under the Connick and Pickering balancing tests. Those are the simple issues that we have in front of us with a couple stemming off of that. But very simply, the Court misapplied that test and misapplied the standards as to how they apply to Mr. Bresnahan in this case. I don't think so. I mean, I don't see how you can survive a Connick review when you didn't – and I know the content of this is available because we sought it out, and it's not before the Court. And you say, oh, he went on context and avoided content, and you didn't put the content forward. I don't understand how you can prevail on those circumstances. Your Honor, you're talking about the video actually being provided in the complaint. The way you described the video is completely different than I read what you put forward as part of the scenario. So, Your Honor, I would point out that an evaluation then of the video would be a factual finding, and we're talking about a finding of law. Well, I think Justice Scalia had a case where he reversed because the video was so clear. Was it Brown? I can't remember. But again, Your Honor, that's something where the video isn't in evidence yet, and I understand that that may be something that the Court would like to see, and frankly, it should be, and I believe that's why this case should be remanded for further proceedings. I was wondering, why wasn't it submitted as part of the – as an exhibit to the complaint or something? There was a kind of an invitation, I think, you know, show us the video, and yet the invitation wasn't accepted, right? And, Your Honor, it's simply – it's just a matter of styling. I'm sorry. A matter of styling. No, no, it's substance. I understand that, but I'm just talking about – Well, let's not talk about style. I'm just talking about how the complaint was drafted and presented to the Court, and so while there's an opportunity to submit something like that – Presented is evidentiary. I mean, it's briefing, and it's whatever is acceptable under 12b-6, such as a video that is clearly part of the complaint expanded. Or if not, then object to 12b-6 on that ground, but put it forward. And I understand that, Your Honor, and I understand that. I'm simply working from where we are right now. And the video is obviously not in evidence or not part of the record in this matter. Again, I do think it's relevant to the complaint, and not only relevant to the complaint but to the underlying issue that we've – But do you have enough in this verbal description to get you over the hump? That's the question, all right? And that's what I'm presenting to this Court. We're talking simply about a low threshold where there simply needs to be facts sufficient to support the claim. What did the District Court say, if anything, about the lack of video in the complaint? Was there anything expressly stated by the District Court? So there actually was. There was a statement by the District Court, and I think it was clear that the District Court would like to see the video, and I assure you I'd like to present the video to the District Court. But one of the statements was, if the video were presented, there may be facts sufficient to support the claim, which is my argument to you that that means there is a set of facts that exist which could provide relief to plaintiff in this case, which is the standard to get – But it has to be interpreted to get to the conic, pickering issue. Actually, Your Honor, I believe that it needs to be the facts as they're taken in the pleadings. So I don't believe there's any interpretation that's necessary in order to do that. They should be taken as true for the 12B6 motion. A matter of public importance? You say, well, this was obvious from the language you quote that this had to do with objecting to Black Lives Matter protesters. Yes, sir. And I read it and I say, no, this was obviously addressed to the press, to the police collectively among themselves griping about the press's constant misrepresentation of police activity. Those are completely different from a conic, pickering analysis standpoint. And I want to make sure I'm not misunderstanding you, but we're talking about context, content, and form as it relates to the speech that was given. Yeah, of course. So context is important, obviously, and that's the background where this was early June of 2020. It was immediately after George Floyd had died. No, no, that's the external context. The internal context is police officers talking among themselves about matters of common interest, but in the form that's private to them, griping about the way the press constantly misrepresents what they're doing. And they can do that in private without speaking, without triggering. That's not protected speech. So, Your Honor, I do think that while it may be a private text messaging group, we're talking about obviously just officers that were receiving this, I think it's too narrow for, or excuse me, I think if we're preventing that from being protected under the First Amendment, it's something that's too narrow. And I realize we're in this. Wait, wait, wait. I mean, I was speaking from cases without citing them. I guess the brochures is one. But there are a lot of cases. There are lots of cases. They talk about that's too private. And yes, sir. The context is too private to be protected. So I would point you to the Heminghaus case, which I think is about as private as it gets. It's one employee with her employer. What case or what court? Judge, that is 8th Circuit, 2014. It's 756 F3rd. It's cited. Yes, sir. And what was the facts? Judge, it's a staff member of a court making complaints to her boss, who was the sitting judge at the time. And there are other cases, Your Honor, I would point out where we can talk about internal complaints that have been made where there's, the complication obviously is that the I mean, that wasn't cited. I don't see it in your case. It's in the reply brief, Your Honor. So if the key issue is not who the speech is directed at, but who receives the speech, what is the key issue in a matter of public concern? The key issue is whether we're talking about with context and form a matter of public concern. I mean, the law is very clear for public employees, and police officers are, especially in this day and age, fall squarely into this, that they have an important point of view. And there may be a large number of people who have an opposing point of view, but that doesn't mean their point of view, even if shared amongst police officers, should be disregarded. So if the point of the video was to raise concerns about press coverage on police, in your opinion, would that be a matter of public concern? I think, Your Honor, it's not just raising the issue of press coverage. No, but my question was if it's limited. In other words, if we saw the video, and that was the takeaway, is that good enough? I understand where you were headed with it, and I understand you've got another component of the argument. But I'm wondering, is that by itself enough? Yes, Your Honor. I believe it is. I mean, we're talking about, as I said, widespread. And each of you knows this, and everybody in this country knows this. This was widespread coverage by news. Wait, let's stop. Every public official in the country, in the back room, gripes about the way the press is treating them. Exactly, Your Honor. And you're saying that every time that that happens, over a water cooler or wherever, because the public is interested in the press and government officials, that's protected. I do think that there's a hair to split there. Because when we're talking about there are lots of government officials that are dealing with this issue directly, right? They are dealing with publicity and how it's affecting their department or their city. Okay, to the point. But those individuals, they may have a specific job interest in the press being handled one direction or the other. This is not that case. We're talking about a- No, this is just the President complaining to the Cabinet members. I mean, they're at it again. Everything we do, they turn into something against the public interest. And again, that's something that's directly related to job duties. We're talking about a police officer who's a beat officer. He's there to be on the scene and make sure- Wait, wait. If it's directly related to job duties, that makes it more closer to being protected. I'm showing the difference between your example and the situation with Mr. Bresnahan here. Again, it is something that's tangentially related to his job duties, but it's not pursuant to his official duties as the President complaining about a Cabinet member would be. Oh, come on. Well- All right, a county sheriff or the head of the highway patrol department or whatever. Everybody gripes about- Those individuals, again, they're not beat officers. Those are people who have a direct interest in how their offices- Well, but not the head of that department, right? A chief or something of that nature. Those individuals have a direct job-related interest in maintaining the publicity of their department. The officers at this lowest level, this isn't a job duty of Mr. Bresnahan's. He wasn't a publicist for the department. He wasn't speaking to reporters. He wasn't doing anything of that nature when he made this speech. And that's the difference that I think is important- Why that makes it more protective. Because, Your Honor, and I would point you- I'm talking about if it's a matter of public interest. Well, and I understand that, and I realize it's jumping a little bit there. But a matter of public interest, Your Honor, again, dealing with a topic such as the Black Lives Matter protest, those were- He wasn't dealing with it. It was in direct response to that, Judge. It was a- No, it was contemporaneous. I'm saying that the speech, the actual conveyed message that Mr. Bresnahan made by sharing this video was to critique those protests. So the message in the video- I disagree with that. And I understand that, Your Honor. I haven't got it to view, but I think as described, as the picture, as the video is described- And again, Your Honor- It may or may not have been satire. It was presented satirically. But I think it was a gripe about, look, we can't do anything right when it comes to the media. What do we know about the nature of this forum? About what its purpose was? Who was on it? What was the kind of typical content? This network. Yes, sir. What do we know about that? What are the allegations about that? And that's exactly what I was trying to pivot to. This was a text message group between officers and their immediate supervisors. We're talking about allegations now, not a complaint. These are in the complaint, yes. Not what your view of the evidence would show, but in the complaint. These are in the complaint. And this is a text message group that dealt with mobilizing officers, as well as other work-related things, but primarily with mobilizing officers to respond to areas where these protesters were, to make sure that nobody was getting hurt, no damage was being done, things of that nature. Again, that's part of the context of this message. There were messages specifically relating to these protests and how to handle them, where Mr. Bresnahan shared this video alongside his opinion of those protesters. This goes to the question of whether the statement was made pursuant to his employment, for instance, in which case we've got a different kind of case. Exactly. And I would point you at that point to Henry V. Johnson, which is an Eighth Circuit case, which is a Missouri State Highway Patrolman who is making a statement, again, tangentially related to work. It's something that maybe he has knowledge about because of work. It's an internal cover-up he's making a complaint about. But it's not pursuant to his official job duties, and therefore it's deemed to be a statement by a private citizen as opposed to a public employee. And I think that's key. Just as we're talking about in this case, we may be splitting hairs, but that's important for this because we want to make sure that public employees maintain their First Amendment rights to the extent that we can and to the extent that it doesn't harm the employer, the city, in this case. This was on a motion to dismiss, is that correct? Mr. Bresnahan's case is here on a 12B6 motion. And so I would point out, I do think it's necessary to talk about symbolic speech before I move. I realize it's a well-covered topic, and I'm sure that you are well-versed on it. I think that's key here, though. Just as everybody's ability to convey a message to the public at large is greatly increased, symbolic speech has also greatly increased. Things that are posted online, things that are shared online, all of those things carry a message inherent with the message, not just the actual, the literal words that are typed out or the literal video that is shared. Depending on the content, the context, and the form, that's the message that's conveyed, and I think that's important to get to. So again, I would end on the fact that this is an issue where Mr. Bresnahan had his First Amendment right. There's been no, has his First Amendment right intact. This was in violation of that First Amendment right, and there's no indication that any damage or harm has been suffered by the city because of that. That balancing test should fall squarely into Mr. Bresnahan's favor. You're not asking us to do the balancing test, are you? I'm not, Your Honor. I don't believe we've gotten there at all. Then let's, your time's up. Thank you, Your Honor. Kilper. Your Honor. May it please the Court. Good morning. Mr. Kilper for the defendants in this case, City of St. Peter's, as well as the individual defendants. Your Honor, the primary issue, as you have already honed in on in this case, is whether the plaintiff can maintain the First Amendment retaliation claim based on the sharing of the video clip to a closed group of his fellow officers on a group chat. Importantly, as Your Honors have already pointed out, the video is not before the Court. It was not provided as part of the initial complaint, nor was it provided as an exhibit to the admitted complaint after the defendant's initial motion to dismiss was granted. Excuse me. What we do have is simply a recitation of a summary of what's included in that video clip. And it's important because this is an issue of law, as the cases point out, and that the Court has to look to the content, form, and context to evaluate to what extent that speech is protected. Did you argue below that the failure to attach the video to the complaint was a defect that supported the motion to dismiss? Yes, Your Honor. In the initial motion to dismiss, there was no summary at all, and that's how Judge Hamilton reached a result there. And the admitted complaint is where we get the summary in paragraph 7 of the admitted complaint, which is the first time we see the summary of what's included in there. And yes, part one of our argument in the disreport was that from the pleading standpoint, Bell and Twombly, that from that point alone, they had not met the pleading standards to assert a claim. But even if you look at the little summary we do have of the video, there is an inherent inconsistency. If you look at paragraph 7 and 8 of the admitted complaint, those are the paragraphs that outline the summary and then what plaintiff's interpretation of what he was trying to convey by sharing that with his fellow officers. And plaintiff alleges, now in hindsight as we sit here, that he was sharing that video as his opinion, as his negative opinion critical of the Black Lives Matter movement and protests. But the summary of the video involves, to your point Judge Logan, involves an African-American, this is from the complaint, African-American police officer who accidentally shoots himself and the headlines on the show are, quote, another innocent black man shot by a cop. And Judge Hamilton picked up on this as well. There's nothing in this admitted complaint that references Black Lives Matter movement at all or the protests. There's no allegation that the plaintiff said anything more when he conveyed that text message video to his colleagues. And again, based on plaintiff's own summary of the clip, there's nothing in this video that speaks to it. The colleague would suggest that this was symbolic speech, I think. And why aren't the allegations in the 12E6 motion, the plaintiff's allegations sufficient here? So we are not contesting that generally the sharing of a video or posting of a meme or an article to Facebook is not speech. So we're not contesting that this element, this video clip is not speech. But what's important for the 12E6 analysis is that the plaintiff has to come to court and allege enough facts there for the court to be able to understand whether they can state a claim. And in this case, it's uniformly held that when evaluating whether the speech at issue meets that standard, you have to go to the content, form, and context analysis. And so as a plaintiff pleading my case in federal court, reading those and knowing the pleading standards, I have an obligation to meet that burden, to be able to provide the court enough so that that analysis can take place, content, form, and context. There is a video. We know there's a video. It was shared. The plaintiff opted not to provide that video after Judge Hamilton indicated with her first order that she would really like to have a look at that. Instead, we get the summary of what's included in the video. And from that summary, I think that the analysis of this court can stop with the first part of the Garcetti test, which is to determine whether the employee spoke as a citizen on a matter of public concern. And I'll address public concern because that's kind of where we are now. To determine what is a public concern, the Supreme Court in Connick tells us that the speech has to relate to some political, social, or other concern in the community. However, this court in the Domina case found that employee speech upon matters of personal interest are not protected. And moreover, it is not enough that the speech at issue simply involves something that the public may have some generalized interest in. And that's the Spahr v. Ward case. How would you distinguish from the Ninth Circuit's opinion in Hernandez? How would you distinguish this case? In which case, Your Honor? Hernandez. Hernandez. So in Hernandez, so we cite that case. In Hernandez, there's a... I'm not talking about the district court. I'm talking about the Ninth Circuit case that was issued on August 5th. Oh, I'm not familiar with that case. Which goes directly against your position here, I think it's fair to say. The Ninth Circuit reversed the district court that you rely on in your briefs. Okay. So I'm not familiar with that case. I don't believe either party cited it. If I may ask you, I may be able to distinguish it as well. Do you remember the primary? Well, I'm not going to lay out the facts here. It's up to Judge Loken. It might be appropriate for Tony and Jay, depending on what the court feels. I don't want any supplemental briefing. Okay. We can read the case. But you may want to take a look at it for your own. Absolutely. Yes, thank you, Your Honor. So, again, if we go to the analysis of the public concern, as I've already reiterated, Plaintiff does not allege that he said anything about the Black Lives Matter movement or the protest. The summary provided to the court, which is the only thing we have indicating what's in the video, likewise does not include any mention to the Black Lives Matter movement. The plaintiff has had an opportunity, two opportunities to provide that to the court. And now, in hindsight, we have the expression, or the plaintiff has alleged that the expression was, in fact, to be a comical parody of the Black Lives Matter movement. And that's just simply not reflected in the pleadings before the court. What does the record say about why the officer was terminated here? The sharing of the video happened on June 9, 2020. The next day, the officer was called in by Chief Strutman. And in the allegations, he alleges that in that meeting, that the chief berated him for making the comment and ordered him to resign his position, indicating that if he didn't resign, then there would be an internal investigation. And he would be terminated, right? Right. And the allegation is that Chief Strutman would recommend that he be terminated. Not that he wouldn't be. The key person would recommend it. Right. I think that's right. That is correct. And I'm reading from the complaint, the amended complaint, that Defendant Strutman would ultimately recommend plaintiff be terminated and that Defendant Russ Batesill would terminate plaintiff's employment. Russ Batesill is the city administrator for the city of St. Peter's. And briefly, too, in addition to not having, in addition to what plaintiff alleges he intended to convey with this video, not matching up with the summary of what's in the video, we also don't have any evidence of any additional speech trying to bring up any kind of malfeasance or mismanagement or misappropriation of funds or anything like that, which are a lot of the cases that the appellant cites in this case where somebody was bringing up they weren't enforcing DWI laws or they were hiding money or the case that counselor ended with, the Henry case. That was an allegation of prosecutorial misconduct and cover-up. Nothing like that in this case. And then now briefly, with my time here, pivoting a little bit to the other part, the first part of the Garcetti test, which is speaking as a citizen. And I think Your Honor picked up on this as well. I think the forum and how this speech was shared is important. It was a closed group text chat that was set up by the city of St. Peter's officers that allowed them to convey information in a quick manner so that they could respond accordingly to any civil unrest or protesting going on. And at that point, there's no contest. There was civil unrest in St. Charles County and St. Louis County and here in the city of St. Louis. That is a factor that the court can consider, and this comes from the DeRocher's case, that the court can consider in evaluating not only does it go to public concern, but also evaluating to what extent he was saying this is a private citizen. To your point, Judge Loken, I think that that's exactly the plaintiff is speaking with his fellow officers and is making some statement. It's not clear exactly what that is, but it's clear that it's going to just his officers. He's not posted that to a private Facebook account, for example, or is not actually tweeting that. The link comes via a reposting of a Twitter account. It's not going to the public at all. In that regard, if we do look at the DeRocher's case, Ninth Circuit case, where in that case, the court was evaluating one of the elements to what extent that conversation was internal versus external. The court looked at the fact that a lot of the conversations and complaints going back and forth were on an internal basis. Here in this court with the Eighth Circuit, I go to the Sparr versus Ward case, which I mentioned earlier, where the plaintiff in the case created a memorandum, shared it with HR against the advice of her supervisor at the time, and she was terminated. As part of the course analysis, they looked to see to what extent that memo touched on matters of public concern or not, finding that her discussion of a management style and potential pending litigation may have touched on the public concern, but that the context made it clear that plaintiff was really speaking about an internal employment matter in that case, and therefore not protected. I also think it's important to point out that this forum is created by police officers for police officers to exchange information, and that the speech in question, even taking the allegations as true, the speech in question arguably is touching on protesting Black Lives Matter movements, potential civil unrest, which all fall within the universe of law enforcement. He could have been terminated for wasting time in a group session that had an important public interest in mind. I think that that is a possibility. You put that out there, and everybody goes back and forth and tweets about that, and they lose track of what they're supposed to be doing in those sessions. I would not disagree with that, Your Honor. And all of a sudden that's protected? I think case law is pretty strong on that. I would agree. Unless there are any additional questions from Your Honors, we would just ask, for the reasons stated in our briefs and here today, Plaintiff cannot make a First Amendment retaliation claim because he cannot show he spoke as a private citizen on a matter of public concern. That's the first level of the Garcetti test, and I think the analysis can stay there. For those reasons, the city and the individual defendants would ask that this court affirm the judgment of the district court dismissing this case. Thank you. I'll give you a minute for rebuttal. Thank you, Your Honor. Thank you, Your Honor. The first one being that Mr. Cooper has said, and it's been throughout all of the briefings and the orders here, that appellants didn't make any other statement than sharing the video. Again, it's symbolic speech. It's an implied statement that he's making. We've included that in our pleadings. It was a critical statement. It's not a literal statement. It is a critical statement of what's going on. I think that's key to this entire thing. I also want to address the forum. We're talking about a private cell phone with officers on their private cell phones dealing with things that are both work and non-work related. If this had been a Facebook group with only those officers as the friends of this officer and he had made that post, it would have gone to the same people. It would have been the same message. But that would have been a protected speech, right, because it's a Facebook as opposed to a text message group. Not if it was private. I don't know all the different things you can do on Facebook, but I would guess they have a way of making it private. Sure, absolutely. Okay, so I don't get the point. My point is that when you post something that's been held to be a Well, if the word post means making it public, then it's different. I understand that, Your Honor. My point is specifically that if the forum changes to a different social media platform, it may change. If it's a Twitter account where we're only going to six people. Well, let's just deal with the platform we've got. And my point is that, Your Honor, the fact that it is only officers that are receiving this, in our age of technology where we can send it to anybody we want, that doesn't mean that a smaller group, a smaller forum, isn't also a public forum or also a forum where the First Amendment protections exist. And if I may just, Your Honor, to address your time-wasting comment in Mr. Cooper's argument, I think that's part of the balancing test. And, again, we'd be happy to get to that point. But that would be the city's obligation to show that there were disruptions to city workings. No, no, no, no, no, no, no. You didn't get the point there. And I'm sorry if I misunderstood, Your Honor. But my point there is that if there was time-wasting that was done, in order to uphold this termination, they would have to show that it was The question was, why was he terminated? And it seems to me there are lots of, well, what's relevant to me is he made absolutely no effort to contest whatever discipline was being suggested or proposed. He quit and sued. And that's tremendously relevant. And, Your Honor, I would tell you that that's not the whole case here, and that's not how it was pled. And so the facts as taken as true is that he was fired by the department because the decision had been made. He was told he would be fired if he didn't resign. No, he said, okay, I resign. Your Honor, and I would point you only at that. No, no, not, come on, I can look it up. I simply have one case that I wanted to add to that. No, don't, no, you don't have to add any cases. He did, he did, he, well, he created an arguable constructive discharge situation and didn't pursue that. And I would actually call it coerced termination as opposed to constructive discharge. Of course you would, come on. But, Your Honor, again, it's simply that the decision was made. He was going to be terminated, and it doesn't matter which route he took because that decision had already been made. Thank you very much. The case has been thoroughly briefed and argued, and we'll take it under advisement.